EXHIBIT 2

ELECTRONICALLY FILED
2015 Sep 28 PM 5:06
CLERK OF THE WYANDOTTE COUNTY DISTRICT COURT
CASE NUMBER: 2015-CV-000909

Beverly M. Weber    KS #20570
Lauren L. Mann     KS #24342
Gregory D. Todd    KS #26577
Martin Leigh PC
1044 Main St., Suite 900
Kansas City, MO 64105
Telephone: (816) 221-1430
Facsimile: (816) 221-1044
bmw@martinleigh.com
llm@martinleigh.com
gdt@martinleigh.com

### IN THE DISTRICT COURT OF WYANDOTTE COUNTY, KANSAS
### CIVIL COURT DEPARTMENT

| | |
|---|---|
| LIBERTY BANK & TRUST COMPANY, SUCCESSOR IN INTEREST TO DOUGLASS NATIONAL BANK, | ) ) ) ) |
| Plaintiff, | ) Case No. ) Court No. |
| vs. | ) ) Title to Real Estate Involved |
| THE VALUE CREATORS, INC., F/K/A/ THE UNITED NATION OF ISLAM, INC.; and JOHN DOE/JANE DOE (Occupant), | ) ) ) ) |
| Defendants. | ) ) ) |

### PETITION FOR MORTGAGE FORECLOSURE
### CHAPTER 60

COMES NOW Plaintiff Liberty Bank & Trust Company, successor in interest to Douglass National Bank, ("Plaintiff") and for its cause of action against defendants states and alleges:

1.    Plaintiff is a business entity organized and existing by virtue of law.

2.    Defendant, The Value Creators, Inc. F/K/A The United Nation of Islam, Inc. (referred to hereinafter as "Value Creators") is a Delaware Not for Profit Corporation and may be served by

(Value Creators/5087.058)

1

delivery of the petition and summons to Value Creators' Registered Agent, Griegory Moten, 1121 Quindaro Boulevard, Kansas City, Kansas 66104.

3.      Defendants John Doe/Jane Doe are residents of Wyandotte County, Kansas and may be served by delivering the summons and petition to 1923 Nebraska Ave, Kansas City, Kansas 66104.

4.      The property which is the subject of this action is legally described as follows:

TRACT 2:

LOT 17 AND THE NORTH 5 FEET OF LOT 5, BLOCK 2, WESTHEIGHT MANOR ADDITION, A SUBDIVISION IN KANSAS CITY, WYANDOTTE COUNTY, KANSAS.

("Property")

6.      On June 15, 2005, Defendant Value Creators, executed a Promissory Note in favor of Douglas National Bank-KS, in the principal sum of $145,000.00, together with interest ("Original Note").

7.      In order to secure the payment of the Original Note, Defendant Value Creators, who was at the same time the owner and in possession of the Property, executed and delivered to Douglass National Bank-KS, a certain real estate mortgage dated June 15, 2005 ("Mortgage"), whereby they conveyed and mortgaged the Property unto Douglas National Bank-KS.

8.      The Mortgage was duly acknowledged according to law and duly filed for record and recorded on June 17, 2005 as Document Number 2005R-15409 in Book 5021 at Page 202 in the Office of the Register of Deeds of Wyandotte County, Kansas and at the time of filing of the Mortgage for record as aforesaid, the Mortgage registration fee thereon was paid to the Register of Deeds Office as provided by law and said filing was prior to the acquisition, by any person or defendants herein, of any right, title, interest, estate, equity or lien in and to the Property. A true and correct copy of the Mortgage is attached hereto marked Exhibit "A" and is made a part of

(Value Creators/5087.058)

this Petition as if fully set forth herein.

9.      Due to the expiration of the maturity date on the Original Note, on August 24, 2010, Defendant Value Creators executed a subsequent Promissory Note in favor of Liberty Bank and Trust Company, who is the successor in interest to Douglass National Bank, in the principal sum of $133,378.63, together with interest ("Subsequent Note").   A true and correct copy of the Subsequent Note is attached hereto marked Exhibit "B" and is made a part of this Petition as if fully set forth herein.

10.     On August 24, 2010, Defendant Value Creators entered into a Modification of Mortgage ("Modified Mortgage") with Plaintiff.  A true and correct copy is attached hereto as "Exhibit C".

11.     The Mortgage provides that the mortgagors will promptly pay the principal and interest of the indebtedness evidenced by the Note at the same time and in the same manner therein provided and if there shall be a default in any of the terms, conditions or covenants of the Mortgage, Modified Mortgage or of the Note secured thereby, then any sums owing by the mortgagors to the mortgagee shall, at the option of the mortgagee, become immediately due and payable and that the mortgagee shall have the right to foreclose on said Mortgage and Modified Mortgage.

12.     On May 9, 2012, Defendant Value Creators executed a Warranty Deed to Cleveland Luster, Sr., which was recorded in the Register of Deeds Office of Wyandotte County, Kansas on May 17, 2012 as Document Number 2012R-06786.  This deed conveyed Tract 1 to Mr. Luster. Tract 1 was a portion of the collateral originally securing payment of the Note.  After this transaction, a Partial Release was recorded August 19, 2015 in the Register of Deeds Office of Wyandotte County, Kansas as Document Number 2015R-11530 which released the Tract 1 as collateral from the Mortgage.  True and correct copies of the Warranty Deed and the Partial Release are attached hereto as Exhibits "D" and "E" respectively.

3

(Value Creators/5087.058)

13.     Defendant Value Creators has failed, neglected and refused to make the payments due under the Subsequent Note, Mortgage and Modified Mortgage and they are in complete default and the conditions and covenants contained in said Subsequent Note, Mortgage and Modified Mortgage have been broken and Plaintiff has exercised its right to declare the entire amount due on and owing under and by virtue of the Subsequent Note, the entire sum secured by the Mortgage and Modified Mortgage. Notice of default has been given according to the terms of the Mortgage.   The Mortgage and Modified Mortgage are subject to foreclosure and should be foreclosed and the Property should be advertised and sold according to law to pay all or a portion of said indebtedness due Plaintiff.

14.     There is now due and owing from Defendant Value Creators the principal amount of $94,500.20 together with interest accruing thereon from and including July 24, 2012 until paid in full, title search expenses advanced by Plaintiff and Plaintiff's costs incurred herein, including but not limited to, publication costs, taxes and any other sums which Plaintiff has or may hereafter advance and pay under the terms and conditions of said Subsequent Note, Mortgage and Modified Mortgage, including reasonable attorney's fees.

15.     At the time of the default in the payment of Plaintiff's Mortgage and Modified Mortgage herein above described, more than 1/3 of the original indebtedness secured by the Mortgage and Modified Mortgage had been paid and the defendant owner's right of redemption should be limited to twelve (12) months from date of sale.

16.     Defendants John Doe/Jane Doe may assert some interest in the Property by virtue of their occupancy in the Property but any such interest is inferior and subordinate to the lien of the Plaintiff.

17.     In the event that Defendant Value Creators obtains relief under Chapter 7 of the bankruptcy code and the debt to the Plaintiff is listed in the appropriate schedules and Plaintiff

4

(Value Creators/5087.058)

obtains relief from the automatic stay, judgment herein against such Defendant will be in rem.

18.     Defendant Value Creators is a Corporation; therefore, is not in the military service of the United States of America as defined by the Service Members Civil Relief Act of 2003, as amended.

19.     Plaintiff, directly or through an agent, has possession of the Subsequent Note. The Subsequent Note is made payable to Plaintiff. Plaintiff is the original mortgagee with respect to the Mortgage and Modified Mortgage for the subject loan. Plaintiff has the right to foreclose the Mortgage and Modified Mortgage and is entitled to enforce the terms of the Subsequent Note.

WHEREFORE, Plaintiff prays for *a* judgment against the Defendant Value Creators and its interest in and to the Property in the principal amount of $94,500.20, together with interest accruing thereon from and including July 24, 2012 until paid in full, title expenses advanced by Plaintiff, Plaintiff's costs incurred herein, including but not limited to, publication costs, taxes, and any sums which Plaintiff has or may hereafter advance and pay under the terms and conditions of said Subsequent Note, Mortgage and Modified Mortgage, including reasonable attorney's fees.

Plaintiff further prays that the Mortgage and Modified Mortgage of Plaintiff hereinabove described be decreed to be a valid first and prior lien upon the Property and that the Mortgage and Modified Mortgage be foreclosed and that the Property be ordered sold according to the law and the proceeds of said sale be applied as follows:

FIRST:          To the payment of costs and accruing costs of this action

SECOND:     To the payment of any real property taxes that may be due and unpaid upon the Property;

THIRD:         To the payment of the indebtedness due this Plaintiff as hereinbefore set forth;

5

(Value Creators/5087.058)

FOURTH:     The surplus to be paid in accordance with the order of the Court herein.

Plaintiff further prays that Defendants The Value Creators, Inc. F/K/A The United Nation of Islam, Inc., a Delaware Not for Profit Corporation; and John Doe/Jane Doe be forever barred and restrained from setting up and claiming any right, title, interest, estate, equity or lien in, to, or upon the Property or any part thereof except the equity of redemption under the Sheriff's Sale that shall be limited to twelve (12) months from the date of said sale and for such other and further relief as the Court may deem just and proper.

Plaintiff further prays that the Sheriff of Wyandotte County, Kansas be ordered to execute to the purchaser at said foreclosure sale a good and sufficient Certificate of Purchase and if the Property is not redeemed within twelve (12) months from the date of the Sheriff's Sale, the Sheriff shall deliver to the holder of said certificate a good and sufficient Sheriff's Deed to the Property further, that defendants be forever barred and enjoined from setting up or asserting any claim to, interest in, or lien on the Property.

Plaintiff further prays that after delivery of the Sheriff's Deed, that the Sheriff of Wyandotte County, Kansas be ordered to place the holder of said Sheriff's Deed in possession of the Property and that, if necessary, and upon praecipe therefore, a writ of assistance be issued by the Clerk of the Court without further order herein, to aid said Sheriff in placing the holder of said Deed in possession of the above described real estate and for such other relief as the Court may deem just.

6

(Value Creators/5087.058)

Respectfully submitted,

MARTIN LEIGH P.C.

Beverly M. Weber     KS #20570
Lauren L. Mann       KS #24342
Gregory D. Todd      KS#26577
bmw@martinleigh.com
llm@martinleigh.com
gdt@martinleigh.com
ATTORNEY FOR PLAINTIFF

**MARTIN, LEIGH, LAWS & FRITZLEN, P.C. IS ATTEMPTING TO COLLECT A**
**DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

7

(Value Creators/5087.058)

ASSURED QUALITY TITLE CO.
Wyandotte County Document Number: 2005R-15409 Page: 1

2005R-15409

REGISTER OF DEEDS
WYANDOTTE COUNTY, KS

RECORDED ON
06/17/2005  11:05:34AM

REC. FEE:   26.00
MORTGAGE TAX:   377.00
TECHNOLOGY FEE:   22.00
INDEBT:   145000.00

PAGES:   11

Bk:5021 Pg:202 212

Diana

Space Above This Line For Recording Data

# MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is June 15, 2005. The parties and their addresses are:

**MORTGAGOR:**
THE UNITED NATION OF ISLAM, INC.
A Delaware Corporation
1200 Minnesota Ave
Kansas City, Kansas 66102

**LENDER:**
**DOUGLASS NATIONAL BANK-KS**
Organized and existing under the laws of the United States of America
1314 N. 5th Street
Kansas City, Kansas 66101
TIN: 48-0969593

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, the following described property:

TRACT 1:
Lots 23 and 24, Block 10, Resurvey of Southwest 1/4 of Block 7 and all Block 8, and parts of Blocks 9 and 10, KENSINGTON, an addition in Kansas City, Wyandotte County, Kansas.
(1832 N. 30th St., Kansas City, KS)

TRACT 2:
Lot 17 and the North 5 feet of Lot 5, Block 2, WESTHEIGHT MANOR ADDITION, a subdivision

The United Nation of Islam, Inc.
Kansas Mortgage                                                                                    Initials
KS/4Veronica███████████                          ©1996 Bankers Systems, Inc., St. Cloud, MN Exßoreß    Page 1



EXHIBIT A

Wyandotte County  Document Number: 2005R-15409  Page: 2

in Kansas City, Wyandotte County, Kansas.
(1923 Nebraska, Kansas City, KS)

The property is located in Wyandotte County at 1923 Nebraska, KCK 66104
1823 N. 30th St., KCK 66104, Kansas City, Kansas .

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights,
crops, timber, all diversion payments or third party payments made to crop producers and all
existing and future improvements, structures, fixtures, and replacements that may now, or at
any time in the future, be part of the real estate described (all referred to as Property). This
Security Instrument will remain in effect until the Secured Debts and all underlying agreements
have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.**  The total principal amount secured by this Security
Instrument at any one time will not exceed $145,000.00.  This limitation of amount does not
include interest and other fees and charges validly made pursuant to this Security Instrument.
Also, this limitation does not apply to advances made under the terms of this Security
Instrument to protect Lender's security and to perform any of the covenants contained in this
Security Instrument.  The limitation is for the purposes set forth in Kan. Stat. Ann. § 9-1101, §
58-2336 and § 79-3102.

**3. SECURED DEBTS.**  This Security Instrument will secure the following Secured Debts:

**A. Specific Debts.**  The following debts and all extensions, renewals, refinancings,
modifications and replacements.  A promissory note or other agreement, No. 4003001361,
dated June 15, 2005, from Mortgagor to Lender, with a loan amount of $145,000.00, with
an interest rate based on the then current index value as the promissory note prescribes and
maturing on June 15, 2010.

**B. All Debts.**  All present and future debts from Mortgagor to Lender, even if this Security
Instrument is not specifically referenced, or if the future debt is unrelated to or of a different
type than this debt.  If more than one person signs this Security Instrument, each agrees that
it will secure debts incurred either individually or with others who may not sign this Security
Instrument.  Nothing in this Security Instrument constitutes a commitment to make additional
or future loans or advances.  Any such commitment must be in writing.  In the event that
Lender fails to provide any required notice of the right of rescission, Lender waives any
subsequent security interest in the Mortgagor's principal dwelling that is created by this
Security Instrument.  This Security Instrument will not secure any debt for which a non-
possessory, non-purchase money security interest is created in "household goods" in
connection with a "consumer loan," as those terms are defined by federal law governing
unfair and deceptive credit practices.  This Security Instrument will not secure any debt for
which a security interest is created in "margin stock" and Lender does not obtain a
"statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.**  All sums advanced and expenses incurred by Lender under the terms of
this Security Instrument.

**4. PAYMENTS.**  Mortgagor agrees that all payments under the Secured Debts will be paid when
due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.**  Mortgagor warrants that Mortgagor is or will be lawfully seized of
the estate conveyed by this Security Instrument and has the right to grant, bargain, convey,
sell, mortgage and warrant the Property.  Mortgagor also warrants that the Property is
unencumbered, except for encumbrances of record.

Wyandotte County Document Number: 2005R-15409 Page: 3

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

**A.** To make all payments when due and to perform or comply with all covenants.

**B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

**C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:

**A.** A beneficial interest in Mortgagor is sold or transferred.

**B.** There is a change in either the identity or number of members of a partnership or similar entity.

**C.** There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.

However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

**10. WARRANTIES AND REPRESENTATIONS.** Mortgagor makes to Lender the following warranties and representations which will continue as long as this Security Instrument is in effect:

**A. Power.** Mortgagor is duly organized, and validly existing and in good standing in all jurisdictions in which Mortgagor operates. Mortgagor has the power and authority to enter into this transaction and to carry on Mortgagor's business or activity as it is now being conducted and, as applicable, is qualified to do so in each jurisdiction in which Mortgagor operates.

**B. Authority.** The execution, delivery and performance of this Security Instrument and the obligation evidenced by this Security Instrument are within Mortgagor's powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which Mortgagor is a party or to which Mortgagor is or any of Mortgagor's property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to Lender, Mortgagor has not changed Mortgagor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name. Without Lender's prior written

Wyandotte County  Document Number: 2005R-15409  Page: 4

consent, Mortgagor does not and will not use any other name and will preserve Mortgagor's existing name, trade names and franchises.

**11. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent.  Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance.  Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument.  Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property.  Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection.  Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**12. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance.  Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.  If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**13. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.  Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies.  The

The United Nation of Islam, Inc.
Kansas Mortgage
KS/4Veronica                                          ©1996 Bankers Systems, Inc., St. Cloud, MN Ex&#8203;_&#8203;_&#8203;_&#8203;  Initials _____  Page 4

Wyandotte County Document Number: 2005R-15409 Page: 5

existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**14. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Business Termination.** Mortgagor merges, dissolves, reorganizes, ends its business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** The value of the Property declines or is impaired.

**M. Material Change.** Without first notifying Lender, there is a material change in Mortgagor's business, including ownership, management, and financial conditions.

**N. Insecurity.** Lender reasonably believes that Lender is insecure.

**15. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay reasonable expenses for Lender to inspect and preserve the Property. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without

Wyandotte County  Document Number: 2005R-15409  Page: 7

limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

**A.** Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**B.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

**C.** Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

**D.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**E.** Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

**F.** Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well be added unless Lender first consents in writing.

**G.** Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**H.** Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

**I.** Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

**J.** Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

**K.** As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response

Wyandotte County Document Number: 2005R-15409 Page: 8

and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**18. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing.)

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured Lender may obtain insurance to protect Lender's interest in the Property. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance.

**20. ESCROW FOR TAXES AND INSURANCE.** As provided in a separate agreement, Mortgagor agrees to pay to Lender funds for taxes and insurance in escrow.

**21. CO-SIGNERS.** If Mortgagor signs this Security Instrument but does not sign the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor,

Wyandotte County Document Number: 2005R-15409 Page: 9

Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**22. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement, homestead exemption, and redemption rights relating to the Property. However, the waiver of redemption is not applicable to that portion of the Property that covers agricultural land or a single or two-family dwelling owned by or held in trust for a natural person.

**23. OTHER TERMS.** The following are applicable to this Security Instrument:

A. **Purchase Money Mortgage.** The Secured Debts include money which is used in whole or in part to purchase the Property.

**24. APPLICABLE LAW.** This Security Instrument is governed by the laws of Kansas, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and the United States of America.

**25. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**26. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**27. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**28. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**29. AGREEMENT TO ARBITRATE.** Lender or Mortgagor may submit to binding arbitration any dispute, claim or other matter in question between or among Lender and Mortgagor that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as

Wyandotte County  Document Number: 2005R-15409  Page: 10

Lender and Mortgagor agree to in writing.  For purposes of this section, this Transaction includes this Security Instrument and any other document relating to the Secured Debts, and proposed loans or extensions of credit that relate to this Security Instrument.  Lender or Mortgagor will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

Lender and Mortgagor must consent to arbitrate any Dispute concerning the Secured Debt secured by real estate at the time of the proposed arbitration.  Lender may foreclose or exercise any powers of sale against real property securing the Secured Debt underlying any Dispute before, during or after any arbitration.  Lender may also enforce the Secured Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

Lender or Mortgagor may seek provisional remedies at any time from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to Lender or Mortgagor.  Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable.  A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity.  The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction.  Any court having jurisdiction may enter a judgment or decree on the arbitrator's award.  The judgment or decree will be enforced as any other judgment or decree.

Lender and Mortgagor acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among Lender and Mortgagor involve interstate commerce.  The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Security Instrument, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Security Instrument or another writing.

**30. WAIVER OF TRIAL FOR ARBITRATION.  Lender and Mortgagor understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation.  If any Dispute is arbitrated, Lender and Mortgagor voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.**

**31. WAIVER OF JURY TRIAL.  If the parties do not opt for arbitration, then all of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation.  All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.**

**SIGNATURES.**  By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument.  Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**MORTGAGOR:**

The United Nation of Islam, Inc.

By _____

James 2x Staton, National Secretary

The United Nation of Islam, Inc.
Kansas Mortgage
KS/4Veronica ████████████                    ©1996 Bankers Systems, Inc., St. Cloud, MN *Express*    Initials _____  Page 10

**2012R-06786**
**REGISTER OF DEEDS**
**WYANDOTTE COUNTY, KS**
**RECORDED ON**
**05/17/2012 09:46:25 AM**
**DEED FEE: 8.00**
**TECHNOLOGY FEE: 4.00**
**PAGES: 2**

First American Title
7925 State Ave, Suite 104
Kansas City, KS 66112

File 1257342          **KANSAS WARRANTY DEED**

Grantor(s): **The United Nation of Islam, a Kansas corporation**

Grantee(s): **Cleveland Luster, Sr., a single person**
Grantee(s) mailing address: **1832 North 30th Street, Kansas City, KS 66104**

In consideration of One Dollar and other valuable consideration, the receipt of which is hereby acknowledged, the Grantor(s) *GRANT, BARGAIN, SELL AND CONVEY* to Grantee(s), the following described premises, to wit:

> **LOTS 23 AND 24, BLOCK 10, RESURVEY OF SOUTHWEST 1/4 OF BLOCK 7 AND ALL BLOCK 8, AND PARTS OF BLOCKS 9 AND 10, KENSINGTON, AN ADDITION IN KANSAS CITY, WYANDOTTE COUNTY, KANSAS.**

Subject to all easements, restrictions, reservations and covenants, if any, now of record

The Grantor(s) hereby covenanting that the Grantor(s), their successors and assigns, will *WARRANT AND DEFEND* the title to the premises unto the Grantee(s), their heirs, successors and assigns, against the lawful claims of all persons whomsoever, excepting however the general taxes for the current calendar year and thereafter, and the special taxes becoming a lien after the date of this deed.

Dated: May 9, 2012

File No.: 1257342



EXHIBIT D

MODIFICATION OF MORTGAGE
(Continued)                                                Page 2

LENDER:

LIBERTY BANK AND TRUST COMPANY

X_____
   Authorized Signer

## CORPORATE ACKNOWLEDGMENT

STATE OF _____        )
                                          ) SS
COUNTY OF _____        )

On this _____ day of _____, 20 _____, before me, the undersigned
officer, personally appeared JAMES E. STATON , National Secretary of THE UNITED NATION OF ISLAM, INC., who
acknowledged himself or herself to be an authorized agent of THE UNITED NATION OF ISLAM, INC., a corporation, and
that he or she, as such agent, being authorized so to do, executed the foregoing Modification of Mortgage for the
purposes therein contained, by signing the name of the corporation by himself or herself as such agent.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

By_____        Residing at _____

Notary Public in and for the State of _____        My appointment expires _____

## LENDER ACKNOWLEDGMENT

STATE OF _____        )
                                          ) SS
COUNTY OF _____        )

This instrument was acknowledged before me this _____ day of _____, 20 ___
by _____ as _____ of  Liberty  Bank  and  Trust  Company

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

By_____        Residing at _____

Notary Public in and for the State of _____        My appointment expires _____

_____

LASER PRO Lending, Ver. 5.52.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2010.  All Rights Reserved.  -
KS\gMO\ILA  L\CFI\LPL\G201.FC  TR-10398  PR-20

RECORDATION REQUESTED BY:
Liberty Bank and Trust Company, 8600 Plaza Drive, 6th Floor, New Orleans, LA  70127

WHEN RECORDED MAIL TO:
Liberty Bank and Trust Company, 8600 Plaza Drive, 6th Floor, New Orleans, LA  70127

SEND TAX NOTICES TO:
Liberty Bank and Trust Company, 8600 Plaza Drive, 6th Floor, New Orleans, LA  70127

<u>FOR RECORDER'S USE ONLY</u>

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated August 24, 2010, is made and executed between THE UNITED NATION OF ISLAM, INC., whose address is 1606 NORTH 13TH STREET, KANSAS CITY, KS  66102 (referred to below as "Grantor") and Liberty Bank and Trust Company, whose address is 8600 Plaza Drive, 6th Floor, New Orleans, LA  70127 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated June 16, 2005 (the "Mortgage") which has been recorded in WYANDOTTE County, State of Kansas, as follows:

FILED JUNE 17, 2005 AS DOCUMENT No. 2005-R-16405 IN BOOK 5021 AT PAGE 202.

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in WYANDOTTE County, State of Kansas:

See TRACT 1:
Lots 23 and 24, block 10, Resurvey of Southwest 1/4 , Block 7 and Block 8, and parts of Blocks 9 and 10, KENSINGTON, an addition in Kansas City, Wyanodtte County, Kansa.
(1832 N. 30th St., Kansas City, KS)

TRACT 2:
Lot 17 and the North 5 feet of Lot 5, block 2, WESTHEIGHT MANOR ADDITION, a subdivision in Kansas City, Wyandotte County, Kansas.
(1923 Nebraska, Kansas City, KS), which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as  1923 NEBRASKA AVENUE AND 1832 NORTH 30TH STREET, KANSAS CITY, KS  66104.

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

MATURITY DATE EXTENDED TO 8-16-16.

CONTINUING VALIDITY.   Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms.  Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note").  It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.  If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED AUGUST 24, 2010.

GRANTOR:

THE UNITED NATION OF ISLAM, INC.

By: _____
JAMES E. STATON , National Secretary of THE UNITED NATION OF
ISLAM, INC.

EXHIBIT C

**PROMISSORY NOTE**
(Continued)                                                                Page 2

and all such accounts.

**COLLATERAL.**  Borrower acknowledges this Note is secured by (1) MODIFICATION OF MORTGAGE AND NOTE DATED AUGUST 24, 2010 IN THE AMOUNT OF $133,378.63 WITH MATURITY DATE EXTENDED TO AUGUST 16, 2016 ON THE PROPERTIES LOCATED AT 1923 NEBRASKA AVENUE AND 1832 NORTH 30TH STREET, KANSAS CITY, KS 66104; ORIGINAL MORTGAGE DATED JUNE 15, 2006 IN THE AMOUNT OF $146,000.00.

**DETAILED COLLATERAL DESCRIPTION.**  (1) MODIFICATION OF MORTGAGE AND NOTE DATED AUGUST 24, 2010 IN THE AMOUNT OF $133,378.63 WITH MATURITY DATE EXTENDED TO AUGUST 16, 2016 ON THE PROPERTIES LOCATED AT 1923 NEBRASKA AVENUE AND 1832 NORTH 30TH STREET, KANSAS CITY, KS 66104; ORIGINAL MORTGAGE DATED JUNE 15, 2006 IN THE AMOUNT OF $146,000.00.

**SUCCESSOR INTERESTS.**  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.**  Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Liberty Bank and Trust Company Loan Servicing 6600 Plaza Drive, 6th Floor New Orleans, LA 70127.

**GENERAL PROVISIONS.**  If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**APPLICABLE LENDING LAW.**  For matters related to interest (as defined by federal law), and to the extent not preempted by federal law, this business or commercial loan is being made under the terms and provisions of  La. R.S. 9:3509, et seq.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

THE UNITED NATION OF ISLAM, INC.

By: _____
JAMES E. STATOR , National Secretary of THE
UNITED NATION OF ISLAM, INC.

LASER PRO Lending, Ver. 5.49.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2010.  All Rights Reserved.  - KS/LA  L:\CFI\LPL\D20 FC  TR-10352  PR-30

# PROMISSORY NOTE

| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓▓ |
|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

| **Borrower:** | THE UNITED NATION OF ISLAM, INC. (TIN:<br>62-1846219)<br>1948 NORTH 13TH STREET<br>KANSAS CITY, KS 66102 | **Lender:** | Liberty Bank and Trust Company<br>6600 Plaza Drive, 6th Floor<br>New Orleans, LA 70127 |
|---|---|---|---|

---

**Principal Amount: $133,378.63**     **Interest Rate: 7.250%**     **Date of Note: August 24, 2010**

**PROMISE TO PAY.** THE UNITED NATION OF ISLAM, INC. ("Borrower") promises to pay to Liberty Bank and Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thirty-three Thousand Three Hundred Seventy-eight & 63/100 Dollars ($133,378.63), together with interest on the unpaid principal balance from August 24, 2010, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.250% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $1,666.96 each and one irregular last payment estimated at $40,176.36. Borrower's first payment is due September 24, 2010, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 24, 2015, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may prepay this Note in full at any time by paying the unpaid principal balance of this Note, plus accrued simple interest and any unpaid late charges through date of repayment. If Borrower prepays this Note in full, or if Lender accelerates payment, Borrower understands that, unless otherwise required by law, any prepaid fees or charges will not be subject to rebate and will be earned by Lender at the time this Note is signed. Borrower agrees to pay minimum interest of 25.00 if this amount has not been earned by Lender at the time of prepayment. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Liberty Bank and Trust Company, Loan Servicing, 6600 Plaza Drive, 6th Floor New Orleans, LA 70127.

**LATE CHARGE.** If Borrower fails to pay any payment under this Note in full within 10 days of when due, Borrower agrees to pay Lender a late payment fee in an amount equal to 5.000% of the unpaid portion of the regularly scheduled payment or $50.00, whichever is greater. Late charges will not be assessed following declaration of default and acceleration of the maturity of this Note.

**INTEREST AFTER DEFAULT.** If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full, as follows: (A) if the original principal amount of this Note is $250,000 or less, the fixed default interest rate shall be equal to eighteen (18%) percent per annum, or three (3%) percent per annum in excess of the interest rate under this Note, whichever is greater; (B) if the original principal amount of this Note is more than $250,000, the fixed default interest rate shall be equal to twenty-one (21%) percent per annum, or three (3%) percent per annum in excess of the interest rate under this Note at the time of default, whichever is greater.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** With respect to interest (as defined by federal law) this Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of laws provisions. In all other respects, this Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Missouri without regard to its conflicts of law provisions. The loan transaction that is evidenced by this Note has been approved, made, and funded, and all necessary loan documents have been accepted by Lender in the State of Louisiana.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orleans Parish, State of Louisiana.

**RETURNED ITEM CHARGE.** In the event that Borrower makes any payment under this Note by check or electronic payment and Borrower's check or electronic payment is returned to Lender unpaid for any reason, Borrower agrees to pay Lender a returned item charge in an amount of $25.00.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any

**EXHIBIT B**

Wyandotte County Document Number: 2005R-15409 Page: 11

**ACKNOWLEDGMENT.**

(Business or Entity)

State OF Kansas, County OF Johnson ss.

This instrument was acknowledged before me this 15th day of June, 2005 by James 2x Staton as National Secretary of The United Nation of Islam, Inc..

My commission expires:

(Notary Public)

Linda Kenney-Cox

NOTARY PUBLIC - State of Kansas
LINDA KENNEY-COX
My Appt. Exp. 2/13/07

The United Nation of Islam, Inc.
Kansas Mortgage
KS/4Veronica[redacted]
©1996 Bankers Systems, Inc., St. Cloud, MN Experts™
Initials 2x
Page 11

The United Nation of Islam, a Kansas
corporation

By: Akiba Majeed, National Secretary of
    The United Nation of Islam

STATE OF Kansas )
                          ) ss.
COUNTY OF Wyandotte )

On May 9 ,2012 this deed was acknowledged before me by **Akiba Majeed, National Secretary of
The United Nation of Islam** of **The United Nation of Islam, a Kansas corporation**, for and on
behalf of said **corporation** .



Notary Public

My appointment expires: 6/17/2014

**LARRY D. CEPHUS**
Notary Public, State of Kansas
My Commission Expires
6/17/2014

U.S._Kansas _Warranty Deed_Rev.(7/12/04)

File No.: 1257342

WYANDOTTE COUNTY DOCUMENT NUMBER 2012M-03786 PAGE NUMBER 2

**2015R-11530**
**NANCY BURNS**
**REGISTER OF DEEDS**
**WYANDOTTE COUNTY, KS**
**RECORDED ON**
**08/19/2015 1:41:52 PM**
**REC FEE: 7.00**
**TECH FEE: 9.00**
**HERITAGE FEE: 3.00**
**PAGES: 3**

TITLE:                          Deed of Release (Partial)

DATE:                           10ᵗʰ day of August, 2015

GRANTOR(S):                     Liberty Bank & Trust Company, successor in interest to
                                Douglas National Bank

GRANTOR(S) ADDRESS:             6600 Plaza Drive, New Orleans, LA 70127

GRANTEE(S):                     The United Nation of Islam, Inc.

GRANTEE(S) ADDRESS:             1200 Minnesota Ave., Kansas City, KS   66102

LEGAL DESCRIPTION:              Tract 1: Lots 23 and 24, block 10, Resurvey of
                                Southwest ¼, Block 7 and Block 8, and parts of
                                Blocks 9 and 10, KENSINGTON, an addition in
                                Kansas City, Wyandotte County, Kansas (1832 N
                                30th St. Kansas City, KS)

REFERENCE BOOK & PAGE
(DOCUMENT) NUMBER:              Mortgage dated June 15, 2005 and recorded on June 17,
                                2005 in Book No. 5021, Page 202

(5087.058, 1923 Nebraska Ave, Kansas City, KS 66104)

Martin, Leigh, Laws & Fritzlen P.C.
1044 Main St., Ste. 900
Kansas City, MO 64105

EXHIBIT E

WYANDOTTE COUNTY DOCUMENT NUMBER 2015R-11530 PAGE NUMBER 1

## PARTIAL DEED OF RELEASE

THIS DEED OF RELEASE WITNESSETH, that Liberty Bank & Trust Company, successor in interest to Douglas National Bank, 6600 Plaza Drive, New Orleans, LA 70127 ("Grantor" or "Lender"), the owner and holder of the Promissory Note evidencing the debt secured by a Mortgage executed by THE UNITED NATION OF ISLAM, INC., A DELAWARE CORPORATION ("GRANTEE" OR "BORROWER"), DATED June 15, 2005, recorded on June 17, 2005, in the Office of the Register of Deed for Wyandotte County, Kansas in Book No. 5021, Page 202, to secure the payment of certain Note in said Mortgage described and set forth;

NOW, THEREFORE, Grantor, holder of and legal owner of said Mortgage and Note, does hereby REMISE AND RELEASE PART of the real estate described in said Mortgage, situated in Wyandotte County, and State of Kansas, to-wit:

**Tract 1:**
**Lots 23 and 24, block 10, Resurvey of Southwest ¼, Block 7 and Block 8, and parts of Blocks 9 and 10, KENSINGTON, an addition in Kansas City, Wyandotte County, Kansas (1832 N 30th St. Kansas City, KS)**

TO HAVE AND TO HOLD THE SAME, with all the appurtenances thereto belonging free, clear and discharged from the encumbrance of said Mortgage.

Executed this 10ᵀᴴ day of AUGUST , 2015:

"Grantor"

LIBERTY   BANK   &   TRUST   COMPANY
SUCCESSOR   IN   INTEREST   TO   DOUGLAS
NATIONAL BANK.

By: _____

Printed Name: _____SIDNEY KING_____

Title: ___REGIONAL PRESIDENT___

On this __10TH__ day of __AUGUST__, 2015, before me, a Notary Public in and for said State, personally appeared ___SIDNEY KING___, who acknowledged that (s)he is a ___REGIONAL PRESIDENT___ of Liberty Bank & Trust Company, successor in interest to Douglas National Bnak, and that (s)he executed the foregoing instrument for the purposes therein contained on behalf of said entity and that the foregoing is the free act and deed of said entity.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year last above written.

Notary Public
Printed Name: Retonya Ricks

My Commission Expires:

4-8-19

RETONYA RICKS
My Appointment Expires
April 8, 2019

(5087.058, 1923 Nebraska Ave, Kansas City, KS 66104)

# BEFORE THE BOARD OF TAX APPEALS
# STATE OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF UNITED NATION OF ISLAM, INC. (THE) FOR EXEMPTION FROM AD VALOREM TAXATION IN WYANDOTTE COUNTY, KANSAS | Docket No. 2015-1418-TX |

## SUMMARY DECISION

Now the above-captioned matter comes on for consideration and decision by the Board of Tax Appeals of the State of Kansas.  The Board conducted a hearing in this matter on December 4, 2015.  The Applicant, The United Nation of Islam, Inc., appeared by Ephraim Woods, Arthur Brooks, and Gregory Moten.  Wyandotte County appeared by Ryan Carpenter, Assistant County Counselor.  Kathy Briney appeared as a witness for the County.

The subject matter of this tax exemption application is described as follows:

> Real estate and improvements commonly
> known as 1608 13th St, Kansas City,
> Wyandotte County, Kansas, also known as
> Parcel ID #105-062-04-0-30-07-025.00-0.

The Applicant requests exemption from ad valorem taxation pursuant to K.S.A. 2014 Supp. 79-201 *Second*.  The Applicant acquired and first used the subject property on August 29, 2007.  Spiritual meetings were conducted in the subject property through tax year 2012.  In 2012, the organization suffered financial difficulties resulting in a change in leadership.  For tax years 2013 until the present, the property has been used to store personal belongings of the members and classroom items and secretarial equipment belonging to the religious organization.  The Applicant acknowledged that the property is in need of repair – it has been vandalized and the roof needs to be replaced.

The County is in agreement that the property was used for spiritual meetings for tax years 2007 through 2012.  However, for tax years 2013 forward, the County questioned if the subject property was in adequate physical condition to house the uses indicated by the applicant.  The County conducted a physical inspection of the subject property in January of 2015.

Docket No. 2015-1418-TX
Wyandotte County, Kansas
Page 2

K.S.A. 2014 Supp. 79-201 *Second* provides an exemption from ad valorem taxes for:

> [a]ll real property, and all tangible personal property, actually and regularly used exclusively for literary, educational, scientific, religious, benevolent or charitable purposes, including property used exclusively for such purposes by more than one agency or organization for one or more of such exempt purposes. . . . [T]his exemption shall not apply to such property, not actually used or occupied for the purposes set forth herein, nor to such property held or used as an investment even though the income or rentals received therefrom is used wholly for such literary, educational, scientific, religious, benevolent or charitable purposes. . . . This exemption shall not be deemed inapplicable to property which would otherwise be exempt pursuant to this paragraph because an agency or organization: (a) Is reimbursed for the provision of services accomplishing the purposes enumerated in this paragraph based upon the ability to pay by the recipient of such services; or (b) is reimbursed for the actual expense of using such property for purposes enumerated in this paragraph; or (c) uses such property for a nonexempt purpose which is minimal in scope and insubstantial in nature if such use is incidental to the exempt purposes of this paragraph; or (d) charges a reasonable fee for admission to cultural or educational activities or permits the use of its property for such activities by a related agency or organization, if any such activity is in furtherance of the purposes of this paragraph; or (e) is applying for an exemption pursuant to this paragraph for a motor vehicle that is being leased for a period of at least one year.

Based on the evidence presented at the hearing and duly weighing such evidence, the Board finds that the applicant, in storing classroom items and secretarial equipment of the religious organization, uses the subject property exclusively for religious purposes. The Board further finds the storage of personal items to be minimal in scope and insubstantial in nature. The Board concludes that the applicant satisfies the conditions enumerated in K.S.A. 2014 Supp. 79-201 *Second.*

IT IS THEREFORE ORDERED that the application for exemption from ad valorem taxation is granted from August 29, 2007, and each succeeding year, so long as the property continues to be used for exempt purposes. In the event the

Docket No. 2015-1418-TX
Wyandotte County, Kansas
Page 3

exempt property ceases to be used for exempt purposes, the applicant must report
that fact to the Wyandotte County Appraiser within 30 days. *See* K.S.A. 79-214.

IT IS FURTHER ORDERED that any refund due and owing the applicant
shall be made pursuant to K.S.A. 2014 Supp. 79-213(k), which limits the refund to
the year immediately preceding the year in which the application is filed in
accordance with K.S.A. 2014 Supp. 79-213(a).

Any party who is aggrieved by this order may file a written petition for
reconsideration with this Board as provided in K.S.A. 77-529, and amendments
thereto. *See* K.S.A. 74-2426(b), and amendments thereto. The written petition for
reconsideration shall set forth specifically and in adequate detail the particular and
specific respects in which it is alleged that the Board's order is unlawful,
unreasonable, capricious, improper or unfair. Any petition for reconsideration shall
be mailed to the Secretary of the Board of Tax Appeals. The written petition must
be received by the Board within 15 days of the certification date of this order
(allowing an additional three days for mailing pursuant to statute).

Rather than filing a petition for reconsideration, any aggrieved person has
the right to appeal this order of the Board by filing a petition with the court of
appeals or the district court pursuant to K.S.A. 74-2426(c)(4)(A), and amendments
thereto. Any person choosing to petition for judicial review of this order must file
the petition with the appropriate court within 30 days from the date of certification
of this order. *See* K.S.A. 77-613(b) and (c) and K.S.A. 74-2426(c), and amendments
thereto. Pursuant to K.S.A. 77-529(d), and amendments thereto, any party
choosing to petition for judicial review of this order is hereby notified that the
Secretary of the Board of Tax Appeals is to receive service of a copy of the petition
for judicial review. Please note, however, that the Board would not be a party to
any judicial review because the Board does not have the capacity or power to sue or
be sued. *See* K.S.A. 74-2433(f), and amendments thereto.

Rather than filing a petition for reconsideration or appealing this order, any
aggrieved party may request, within 14 days of receiving this order, a full and
complete opinion be issued by the Board pursuant to K.S.A. 74-2426(a), and
amendments thereto.

If both parties are aggrieved by this order, and one party timely appeals this
order to the district court (which necessitates a trial de novo pursuant to K.S.A. 74-
2426(c)(4)(A)), then this order will be deemed final and will render moot any
pending petition for reconsideration or request for a full and complete opinion filed
by the other party. If both parties are aggrieved by this order, one party timely
appeals this order to the court of appeals (which would involve appellate review
under the Kansas judicial review act), and the other party timely files a petition for

Docket No. 2015-1418-TX
Wyandotte County, Kansas
Page 4

reconsideration or request for a full and complete opinion, then this order will be deemed non-final and the Board will proceed to render an order regarding reconsideration or a full and complete opinion, as applicable.

Unless an aggrieved party files a timely written request for a full and complete opinion or a timely petition for reconsideration as set forth herein, this order will be appealable by that party only by timely appeal to the district court or the court of appeals as set forth above.

The address for the Secretary of the Board of Tax Appeals is Board of Tax Appeals, Eisenhower State Office Building, 700 SW Harrison St., Suite 1022, Topeka, KS 66603. A party filing any written request or petition shall also serve a complete copy of any written request or petition on all other parties. Please be advised that the administrative appeal process is governed by statutes enacted by the legislature and no further appeal will be available beyond the statutory time frames.

IT IS SO ORDERED

THE KANSAS BOARD OF TAX APPEALS

RONALD C. MASON, BOARD MEMBER

JAMES D. COOPER, BOARD MEMBER

DEVIN SPRECKER, BOARD MEMBER

ATTEST:

JOELENE R. ALLEN, SECRETARY

Docket No. 2015-1418-TX
Wyandotte County, Kansas
Page 5

## CERTIFICATE OF SERVICE

I, Joelene R. Allen, Secretary of the Kansas Board of Tax Appeals, do hereby certify that a true and correct copy of this order in Docket No. 2015-1418-TX, and any attachments thereto, was placed in the U.S. mail, on this 9th day of December, 2015, addressed to:

Ephraim Woods
2723 Parallel Ave
Kansas City, KS  66104

Ephraim Woods, Minister of Business
United Nation of Islam Inc
1121 Quindaro Blvd
Kansas City, KS  66102

Eugene W Bryan, County Appraiser
Wyandotte County Annex
8200 State Ave
Kansas City, KS  66112

Ryan Carpenter, Asst County Counselor
Wyandotte County Courthouse
701 N 7th St, Room 961
Kansas City, KS  66101

Debbie Pack, County Treasurer
Wyandotte County Courthouse
710 N 7th St Ste 240
Kansas City, KS  66101

IN TESTIMONY WHEREOF, I have hereunto subscribed my name at Topeka, Kansas.

Joelene R. Allen, Secretary

  **CIC Tax Administration Solution**

INSTANT Response    Version: 4.4.022.27
Tax Year: 2007

       

Name/Address   Assessment   Collection   Motor Vehicle Management   Add Abate Escape   N\*P   Site   Imaging   Exit

## REVIEW VALUES AND TAXES CHANGES

Orig. NameID: THEN00002   New NameID: THEN00002   THE NATION OF ISLAM INC   **Tax Year: 2007   Tax type: RL**

Tax Unit: 10   **Parcel #: 209893**   User Control #: 2016000556 System Control #: 2016000556

Abst. Type: CL - Clerical Error   Stm. #: 203089   Levy: 155.59900   USD Levy: 20.0000   AAE Type: Abate   AAE Reason: EX

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | | |
|---|---|---|---|---|---|---|---|---|---|
| Old Value: | 49,267 | Old Value: | 0 | Old Value: | 49,267 | Old Value: | 0 | **Access Support** | View History |
| Change: | -16,749 | Change: | 0 | Change: | -16,749 | Change: | 0 | View Tax Records | Update Process |
| New Value: | 32,518 | New Value: | 0 | New Value: | 32,518 | New Value: | 0 | | |

| Tax Changes | 1st Half | 2nd Half | Total | Original Paid | | | |
|---|---|---|---|---|---|---|---|
| Gross Tax Change | -1,303.06 | -1,303.06 | -2,606.12 | First Half: | 1,033.42 | + Penalties / Fees: | |
| Net tax Change | -1,303.06 | -1,303.06 | -2,606.12 | Second Half: | .00 | + Refund Interest: | |
| | | | | Penalties: | 928.70 | | |
| **Original Tax** | | Update Tax | | Fees: | 16.00 | | |
| First Half: | 3,832.95 | First Half: | 2,529.89 | | | | |
| Second Half: | 3,832.95 | Second Half: | 2,529.89 | Update Paid | | | |
| Exemption 1st Half: | .00 | Exemption 1st Half: | .00 | First Half: | 1,033.42 | THE NATION OF ISLAM INC | |
| Exemption 2nd Half: | .00 | Exemption 2nd Half: | .00 | Second Half: | .00 | | |

Comments
***NEW BILL***EXEMPTION-PER BOTA
DOCKET NUMBER 2015-1418-TX
PROPERTY IS PARTIALLY EXEMPT
EFFECTIVE AUGUST 29.2007

**Paid, BOTA Exempted**

1121 QUINDARO BOULEVARD

KANSAS CITY, KS - 66104-0000

**Reload Refund Name and Address**

Status

 **CIC Tax Administration Solution**

INSTANT Response     Version: 4.4.022.27
Tax Year: 2008

        

Name/Address   Assessment   Collection   Meter Var. In Management   Add Abate Escape   Info   Site   Image Mg   Exit

### REVIEW VALUES AND TAXES CHANGES

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC   **Tax Year:** 2008   **Tax type:** RL   **Warrant #:** 13849

**Tax Unit:** 10   **Parcel #:** 209551   **User Control #:** 2016000557 **System Control #:** 2016000557

**Abat. Type:** CL - Clerical Error   **Stm. #:** 205062   **Levy:** 152.70200   **USD Levy:** 20.0000 **AAE Type:** Abate   **AAE Reason:** EX

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | |
|---|---|---|---|---|---|---|---|---|
| **Old Value:** | 59,350 | **Old Value:** | 0 | **Old Value:** | 59,350 | **Old Value:** | 0 | Access Support   View History |
| **Change:** | -59,350 | **Change:** | 0 | **Change:** | -59,350 | **Change:** | 0 | View Tax Records   Update Process |
| **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | |

| Tax Changes | 1st Half | 2nd Half | Total | Original Paid | |
|---|---|---|---|---|---|
| **Gross Tax Change** | -4,531.36 | -4,531.35 | -9,062.71 | **First Half:** | .00 |
| **Net tax Change** | -4,531.36 | -4,531.35 | -9,062.71 | **Second Half:** | .00 |
| | | | | **Penalties:** | .00 |
| Original Tax | | Update Tax | | **Fees:** | .00 |
| **First Half:** | 4,531.36 | **First Half:** | .00 | | |
| **Second Half:** | 4,531.35 | **Second Half:** | .00 | Update Paid | |
| **Exemption 1st Half:** | .00 | **Exemption 1st Half:** | .00 | **First Half:** | .00 |
| **Exemption 2nd Half:** | .00 | **Exemption 2nd Half:** | .00 | **Second Half:** | .00 |

+ Penalties / Fees:
+ Refund Interest:

Comments
EXEMPTION-PER BOTA DOCKET
NUMBER 2015-1418-TX PROPERTY IS
EXEMPT EFFECTIVE AUGUST 29,2007

Paid, BOTA Exempted

THE NATION OF ISLAM INC

1121 QUINDARO BOULEVARD

KANSAS CITY, KS - 66104-0000

**Reload Refund Name and Address**

Status

 # CIC Tax Administration Solution

INSTANT Response     Version: 4.4.022.27
Tax Year: 2009

       

Name/Address   Assessment   Collection   Vote ... Management   Add Abate Charge   ...   Site   Imaging   ...

## REVIEW VALUES AND TAXES CHANGES

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC   **Tax Year:** 2009   **Tax type:** RL   **Warrant #:** 200310767

**Tax Unit:** 10   **Parcel #:** 209551   **User Control #:** 2016000558 **System Control #:** 2016000558

**Abat. Type:** CL  Classi Real   **Stm. #:** 39736   **Levy:** 164.66300   **USD Levy:** 20.0000   **AAE Type:** Abate   **AAE Reason:** EQ

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | | |
|---|---|---|---|---|---|---|---|---|---|
| Old Value: | 58,163 | Old Value: | 0 | Old Value: | 58,163 | Old Value: | 0 | Access Support | View History |
| Change: | -58,163 | Change: | 0 | Change: | -58,163 | Change: | 232,650 | View Tax Records | Update Process |
| New Value: | 0 | New Value: | 0 | New Value: | 0 | New Value: | 232,650 | | |

| Tax Changes | 1st Half | 2nd Half | Total | Original Paid | | |
|---|---|---|---|---|---|---|
| Gross Tax Change | -4,788.65 | -4,788.65 | -9,577.30 | First Half: | 931.97 | + Penalties / Fees: |
| Net tax Change | -4,788.65 | -4,788.65 | -9,577.30 | Second Half: | .00 | + Refund Interest: |
| Original Tax | | Update Tax | | Penalties: | 1,202.03 | |
| First Half: | 4,788.65 | First Half: | .00 | Fees: | 16.00 | |
| Second Half: | 4,788.65 | Second Half: | .00 | Update Paid | | |
| Exemption 1st Half: | .00 | Exemption 1st Half: | .00 | First Half: | .00 | NO REFUND ..TAX OVERRIDE |
| Exemption 2nd Half: | .00 | Exemption 2nd Half: | .00 | Second Half: | .00 | |

Comments
***NO REFUND....TAX
OVERRIDE***EXEMPTION-PER BOTA
DOCKET NUMBER 2015-1418-TX
PROPERTY IS EXEMPT EFFECTIVE AUGU

Paid, BOTA Exempted          Reload Refund Name and Address

Status

 # CIC Tax Administration Solution

INSTANT Response     Version: 4.4.022.27
Tax Year: 2010

       
Name/Address   Assessment   Collection   Meter Collection Management   AAE   Title   Imaging   Exit

## REVIEW VALUES AND TAXES CHANGES

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC   **Tax Year:** 2010   **Tax type:** RL

**Tax Unit:** 10   **Parcel #:** 209551   **User Control #:** 2016000559   **System Control #:** 2016000559

**Abat. Type:** CL - Correct Error   **Stm. #:** 30511   **Levy:** 167.74500   **USD Levy:** 20.0000   **AAE Type:** Abate   **AAE Reason:** EX

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | |
|---|---|---|---|---|---|---|---|
| Old Value: | 53,651 | Old Value: | 0 | Old Value: | 53,651 | Old Value: | 0 |
| Change: | -53,651 | Change: | 0 | Change: | -53,651 | Change: | 214,600 |
| New Value: | 0 | New Value: | 0 | New Value: | 0 | New Value: | 214,600 |

**Access Support**   **View History**
**View Tax Records**   **Update Process**

| Tax Changes | 1st Half | 2nd Half | Total | Original Paid | |
|---|---|---|---|---|---|
| Gross Tax Change | -4,499.85 | -4,499.85 | -8,999.70 | First Half: | 4,499.85 |
| Net tax Change | -4,499.85 | -4,499.85 | -8,999.70 | Second Half: | 4,499.85 |

+ Penalties / Fees:
+ Refund Interest:

| Original Tax | | Update Tax | | Penalties: | .00 |
|---|---|---|---|---|---|
| First Half: | 4,499.85 | First Half: | .00 | Fees: | .00 |
| Second Half: | 4,499.85 | Second Half: | .00 | Update Paid | |
| Exemption 1st Half: | .00 | Exemption 1st Half: | .00 | First Half: | .00 |
| Exemption 2nd Half: | .00 | Exemption 2nd Half: | .00 | Second Half: | .00 |

NO REFUND...TAX OVERRIDE

Comments
***NO REFUND...TAX
OVERRIDE***EXEMPTION-PER BOTA
DOCKET NUMBER 2015-1418-TX
PROPERTY IS EXEMPT EFFECTIVE AUGU
Paid, BOTA Exempted

**Reload Refund Name and Address**

Status

 **CIC Tax Administration Solution** 

INSTANT Response    Version: 4.4.022.27
Tax Year  2011

Name/Address  Assessment  Collection  Motor Vehicle Management  Add Abate Escape  h/s 2  Ide  Imaging  Exit

of 2

**REVIEW VALUES AND TAXES CHANGES**

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC   **Tax Year:** 2011   **Tax type:** RL

**Tax Unit:** 10   **Parcel #:** 209551   **User Control #:** 2016000560 **System Control #:** 2016000560

**Abat. Type:**  ..  Cause! Error   **Stm. #:** 27747   **Levy:** 174.96000   **USD Levy:** 20.0000 **AAE Type:** Abat  **AAE Reason:** EQ

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | |
|---|---|---|---|---|---|---|---|---|
| **Old Value:** | 54,401 | **Old Value:** | 0 | **Old Value:** | 54,401 | **Old Value:** | 0 | **Access Support**  **View History** |
| **Change:** | -54,401 | **Change:** | 0 | **Change:** | -54,401 | **Change:** | 217,600 | **View Tax Records**   **Update Process** |
| **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 217,600 | |

| Tax Changes | | | | Original Paid | | |
|---|---|---|---|---|---|---|
| | **1st Half** | **2nd Half** | **Total** | **First Half:** | 4,759.00 | + Penalties / Fees: |
| **Gross Tax Change** | -4,759.00 | -4,759.00 | -9,518.00 | **Second Half:** | 4,759.00 | + Refund Interest: |
| **Net tax Change** | -4,759.00 | -4,759.00 | -9,518.00 | **Penalties:** | 83.05 | |
| Original Tax | | Update Tax | | **Fees:** | .00 | |
| **First Half:** | 4,759.00 | **First Half:** | .00 | Update Paid | | |
| **Second Half:** | 4,759.00 | **Second Half:** | .00 | **First Half:** | .00 | NO REFUND...TAX OVERRIDE |
| **Exemption 1st Half:** | .00 | **Exemption 1st Half:** | .00 | **Second Half:** | .00 | |
| **Exemption 2nd Half:** | .00 | **Exemption 2nd Half:** | .00 | | | |

Comments:
"**"NO REFUND...TAX
OVERRIDE"**"EXEMPTION-PER BOTA
DOCKET NUMBER 2015-1418-TX
PROPERTY IS EXEMPT EFFECTIVE AUGU

Paid, BOTA Exempted        **Reload Refund Name and Address**

Status

 **CIC Tax Administration Solution**

INSTANT Response   Version: 4.4.022.27
Tax Year: 2012

        

of

**REVIEW VALUES AND TAXES CHANGES**

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC   **Tax Year:** 2012   **Tax type:** RL   **Warrant #:** 19202

**Tax Unit:** 10   **Parcel #:** 209551   **User Control #:** 2016000561 **System Control #:** 2016000561

**Abat. Type:** CL - Common Error   **Stm. #:** 27484   **Levy:** 175.34467   **USD Levy:** 20.0000   **AAE Type:** Abate   **AAE Reason:** EQ

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | |
|---|---|---|---|---|---|---|---|
| **Old Value:** | 53,701 | **Old Value:** | 0 | **Old Value:** | 53,701 | **Old Value:** | 0 |
| **Change:** | -53,701 | **Change:** | 0 | **Change:** | -53,701 | **Change:** | 214,800 |
| **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 214,800 |

[ **Access Support** ]   **View History**

**View Tax Records**   **Update Process**

Tax Changes

| | 1st Half | 2nd Half | Total |
|---|---|---|---|
| **Gross Tax Change** | -4,708.09 | -4,708.09 | -9,416.18 |
| **Net tax Change** | -4,708.09 | -4,708.09 | -9,416.18 |

Original Tax

| | | Update Tax | |
|---|---|---|---|
| **First Half:** | 4,708.09 | **First Half:** | .00 |
| **Second Half:** | 4,708.09 | **Second Half:** | .00 |
| **Exemption 1st Half:** | .00 | **Exemption 1st Half:** | .00 |
| **Exemption 2nd Half:** | .00 | **Exemption 2nd Half:** | .00 |

Original Paid

| **First Half:** | .00 |
|---|---|
| **Second Half:** | .00 |
| **Penalties:** | .00 |
| **Fees:** | .00 |

Update Paid

| **First Half:** | .00 |
|---|---|
| **Second Half:** | .00 |

+ **Penalties / Fees:**

+ **Refund Interest:**

THE NATION OF ISLAM INC

Comments
EXEMPTION-PER BOTA DOCKET
NUMBER 2015-1418-TX PROPERTY IS
EXEMPT EFFECTIVE AUGUST 29,2007

1121 QUINDARO BOULEVARD

KANSAS CITY, KS - 66104-0000

Paid, BOTA Exempted

**Reload Refund Name and Address**

Status

sir

 **CIC Tax Administration Solution**

        

INSTANT Response    Version: 4.4.022.27
Tax Year: 2013

**REVIEW VALUES AND TAXES CHANGES**

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC      **Tax Year:** 2013   **Tax type:** RL      **Warrant #:** 8101

**Tax Unit:** 10   **Parcel #:** 209551      **User Control #:** 2016000562 **System Control #:** 2016000562

**Abat. Type:** RL - Clerical Error      **Stm. #:** 26428      **Levy:** 178.75037   **USD Levy:** 20.0000   **AAE Type:** Abate      **AAE Reason:** EX

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | |
|---|---|---|---|---|---|---|---|---|
| **Old Value:** | 53,676 | **Old Value:** | 0 | **Old Value:** | 53,676 | **Old Value:** | 0 | **Access Support**   **View History** |
| **Change:** | -53,676 | **Change:** | 0 | **Change:** | -53,676 | **Change:** | 214,700 | **View Tax Records**   **Update Process** |
| **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 214,700 | |

| Tax Changes | 1st Half | 2nd Half | Total | Original Paid | |
|---|---|---|---|---|---|
| **Gross Tax Change** | -4,797.30 | -4,797.30 | -9,594.60 | **First Half:** | .00 |
| **Net tax Change** | -4,797.30 | -4,797.30 | -9,594.60 | **Second Half:** | .00 |

→ Penalties / Fees:
→ Refund Interest:

| Original Tax | | Update Tax | | | |
|---|---|---|---|---|---|
| **First Half:** | 4,797.30 | **First Half:** | .00 | **Penalties:** | .00 |
| **Second Half:** | 4,797.30 | **Second Half:** | .00 | **Fees:** | .00 |
| **Exemption 1st Half:** | .00 | **Exemption 1st Half:** | .00 | Update Paid | |
| **Exemption 2nd Half:** | .00 | **Exemption 2nd Half:** | .00 | **First Half:** | .00 |
| | | | | **Second Half:** | .00 |

Comments:
EXEMPTION-PER BOTA DOCKET
NUMBER 2015-1418-TX PROPERTY IS
EXEMPT EFFECTIVE AUGUST 29,2007

Paid, BOTA Exempted

THE NATION OF ISLAM INC

1121 QUINDARO BOULEVARD

KANSAS CITY, KS - 66104-0000

**Reload Refund Name and Address**

Status

 **CIC Tax Administration Solution**   INSTANT Response   Version: 4.4.022.27
Tax Year: 2014

       

Name/Address   Assessment   Collection   Meter Management   Add Amort Square   Map   Site   Imaging   Exit

**REVIEW VALUES AND TAXES CHANGES**

| | |
|---|---|
| **Orig. NameID:** THEN00002  **New NameID:** THEN00002   THE NATION OF ISLAM INC | **Tax Year:** 2014  **Tax type:** RL   **Warrant #:** 9379 |
| **Tax Unit:** 10    **Parcel #:** 209551 | **User Control #:** 2016000563  **System Control #:** 2016000563 |
| **Abat. Type:** Gen-Clerical Error    **Stm. #:** 25825    **Levy:** 167.64500  **USD Levy:** 20.0000  **AAE Type:** Abate    **AAE Reason:** EX |

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Old Value:** | 53,351 | **Old Value:** | 0 | **Old Value:** | 53,351 | **Old Value:** | 0 | **Access Support** | **View History** |
| **Change:** | -53,351 | **Change:** | 0 | **Change:** | -53,351 | **Change:** | 213,400 | | |
| **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 213,400 | **View Tax Records** | **Update Process** |

| Tax Changes | 1st Half | 2nd Half | Total | Original Paid | | |
|---|---|---|---|---|---|---|
| **Gross Tax Change** | -4,472.02 | -4,472.02 | -8,944.04 | **First Half:** | .00 | **+ Penalties / Fees:** |
| **Net tax Change** | -4,472.02 | -4,472.02 | -8,944.04 | **Second Half:** | .00 | **+ Refund Interest:** |

| Original Tax | | Update Tax | | | |
|---|---|---|---|---|---|
| **First Half:** | 4,472.02 | **First Half:** | .00 | **Penalties:** | .00 |
| **Second Half:** | 4,472.02 | **Second Half:** | .00 | **Fees:** | .00 |
| **Exemption 1st Half:** | .00 | **Exemption 1st Half:** | .00 | Update Paid | |
| **Exemption 2nd Half:** | .00 | **Exemption 2nd Half:** | .00 | **First Half:** | .00 |
| | | | | **Second Half:** | .00 |

THE NATION OF ISLAM INC

Comments
EXEMPTION-PER BOTA DOCKET
NUMBER 2015-1418-TX PROPERTY IS
EXEMPT EFFECTIVE AUGUST 29,2007

1121 QUINDARO BOULEVARD

KANSAS CITY, KS - 66104-0000

**Paid, BOTA Exempted**

**Reload Refund Name and Address**

Status

 **CIC Tax Administration Solution**  INSTANT Response   Version: 4.4.022.27
Tax Year: 2015

         

Name/Address   Assessment   Collection   Voter Management   Adv. Abate Change   IVR   Site   Imaging   Exit

of

**REVIEW VALUES AND TAXES CHANGES**

**Orig. NameID:** THEN00002   **New NameID:** THEN00002   THE NATION OF ISLAM INC   **Tax Year:** 2015   **Tax type:** RL

**Tax Unit:** 10   **Parcel #:** 209551   **User Control #:** 2016000564 **System Control #:** 2016000564

**Abat. Type:** CIC - Clerical Error   **Stm. #:** 26140   **Levy:** 171.81800   **USD Levy:** 20.0000 **AAE Type:** Abate   **AAE Reason:** EX

| Assessed Values | | Assessed Penalties | | Total Assessed Values | | Assessed Exemption | | |
|---|---|---|---|---|---|---|---|---|
| **Old Value:** | 38,076 | **Old Value:** | 0 | **Old Value:** | 38,076 | **Old Value:** | 0 | **Access Support** / **View History** |
| **Change:** | -38,076 | **Change:** | 0 | **Change:** | -38,076 | **Change:** | 152,300 | **View Tax Records** / **Update Process** |
| **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 0 | **New Value:** | 152,300 | |

Tax Changes

| | 1st Half | 2nd Half | Total | Original Paid | | |
|---|---|---|---|---|---|---|
| **Gross Tax Change** | -3,271.07 | -3,271.07 | -6,542.14 | **First Half:** | .00 | + Penalties / Fees: |
| **Net tax Change** | -3,271.07 | -3,271.07 | -6,542.14 | **Second Half:** | .00 | + Refund Interest: |
| Original Tax | | Update Tax | | **Penalties:** | .00 | |
| **First Half:** | 3,271.07 | **First Half:** | .00 | **Fees:** | .00 | |
| **Second Half:** | 3,271.07 | **Second Half:** | .00 | Update Paid | | |
| **Exemption 1st Half:** | .00 | **Exemption 1st Half:** | .00 | **First Half:** | .00 | THE NATION OF ISLAM INC |
| **Exemption 2nd Half:** | .00 | **Exemption 2nd Half:** | .00 | **Second Half:** | .00 | |

Comments
EXEMPTION-PER BOTA DOCKET
NUMBER 2015-1418-TX PROPERTY IS
EXEMPT EFFECTIVE AUGUST 29,2007

Paid, BOTA Exempted

1121 QUINDARO BOULEVARD

KANSAS CITY, KS - 66104-0000

**Reload Refund Name and Address**

Status

Headquarters Mailing Address:
1121 Quindaro Blvd
Kansas City, Kansas 66104
913.314.0299 * FAX 913.233.0055
E-mail: therighteous417@gmail.com.

# The United Nation
# Of Islam
# Building A Nation



## CONTRACTUAL AGREEMENT (Amended)

This agreement is for the purchase of the following property:

1608 North 13th Street – Kansas City, KS 66102 (Parcel Number 209551)

1310 Freeman Avenue – Kansas City, KS 66102 (Parcel Number 209549)

1.  Purchaser, Khushvah Navruzov agrees to make a non-refundable deposit of $1,000.00 by cash on this day of April 2, 2016 towards the total purchase price of $42,000.00, **which has been fulfilled**.

2.  Both Seller and Purchaser agree to the Seller paying the Property Tax obligations on 1608 N. 13th Street (Parcel# 209551) totaling $4,026.36 by April 7th, 2016, **which has been fulfilled**.

3.  Both Seller and Purchaser agree to the Seller withholding $2,675.36, representing the Property Tax obligations currently due on 1310 Freeman Ave. Kansas City, KS 66102 (Parcel# 209549).  Property Taxes are subject to a pending Tax Exemption status.  Upon granting of Property Tax Exemption, $2,675.36 is due to the Seller.  Payment is to be rendered within seven (7) days of notification from the Seller.  Should the Tax Exemption status be disallowed, Seller agrees to surrender $2,675.36 payment towards the Property Tax balance to the Unified Government of Wyandotte County, Treasurer. **This part of the contract has been fulfilled**.

4.  Purchaser further agrees that the lump sum balance of $34,297.88 is due and payable on or before April 9th, 2016 by Cashier's Check payable to The United Nation of Islam, Inc. after the Title has cleared and Property Taxes have been paid. **This part of the contract has been fulfilled**.

5.  Upon full payment of the total purchase price of $42,000.00 (less Property Tax withholding of $2,675.76 due on 1310 Freeman Ave.), Khushvah Navruzov will assume complete responsibility of said properties including but not limited to the building structure and premises.

6.  Purchaser further agrees to be fully liable for any and all damages that may occur while the properties are undergoing repairs for a period of six months to one year commencing from the date of full remittance (i.e. starting date of April 8th, 2016).  After completion of the repair period of 6 to 12 months, Purchaser, Khushvah Navruzov will be furnished with a Warranty Deed denoting full rights and possession as the Owner of said properties. **The above notation (identified as line six (6) in this Contractual Agreement) is now amended and extended to the following date of** December 31, 2017 **for the purpose of completion of building repairs.**

KN Initials

F. N. V. Initials

Page 1 of 2

7. Seller, The United Nation of Islam agrees to sell the properties to the Purchaser on an AS-IS basis. Seller will conduct a Title Search no later than April 9, 2016, **which has been completed**.

8. Seller is responsible for clean up and removal trash and debris from the properties to be completed by April 30, 2016. **This part of the contract has been fulfilled**.

9. A walk-through of the premises for the purpose of the Purchaser to make known any requests for parts and/or equipment that he would like to keep (also on an AS-IS basis) in conjunction with the purchase of said properties. **This part of the contract has been fulfilled**.

10. Dates and times of clean up and removal of trash and debris is to be determined by mutual agreement of both parties upon completion of the walk-through assessment. **This part of the contract has been fulfilled**.

### Acceptance of Contractual Agreement:

The above prices and conditions are accurate and hereby accepted. The deposit is non-refundable based on the condition that everything stated is accurate and truthful. The United Nation of Islam, Inc. (Seller) and Khushvah Navruzov (Purchaser) reserves the right to cancel this contract within three (3) business days from the date of acceptance without recourse.

This contract was originally executed on the day of **April 8th, 2016** and now being updated August 1st, 2017 between **The United Nation of Islam, Inc.** (Seller) and **Khushvah Navruzov** (Purchaser).

Khushvah Navruzov
Print Name of Purchaser                          Signature

Ephraim Woods, Director
Print Name and Title                             Signature
Authorized Representative,
The United Nation of Islam, Inc.

On: **August 1ˢᵗ, 2017**, the "Seller": **The United Nation of Islam, Inc.** (represented by: **Ephraim Woods, Director**) and the "Purchaser": **Khushvah Navruzov** personally came before me and, being duly sworn, did state and prove that he/she is that person described in the above document and that he/she signed the above document in my presence.

Claudia B Velazquez
Notary Printed/Name

Notary Signature

My commission expires: 3·18·18

SEAL:

Notary Public, in and for the county of Johnson , State of **Kansas**


Initials
Initials

Page 2 of 2