IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENDRA ROSS,** <br><br> Plaintiff, <br><br> v. <br><br> **ROYALL JENKINS, et al.,** <br><br> Defendants. | Case No. 17-2547-DDC-TJJ |
| **KENDRA ROSS,** <br><br> Plaintiff, <br><br> v. <br><br> **THE PROMISE KEEPERS, INC., et al.,** <br><br> Defendants. | Case No. 19-2091-DDC-TJJ |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff Kendra Ross's Renewed Partial Motion for Default Judgment (Doc. 269) (also available as Doc. 81 in the CM/ECF record in *Ross v. The Promise Keepers, Inc., et al.*, No. 19-2091) against defendants The Promise Keepers, Inc., The Promise Keepers 417, Inc., and The Promise Keepers 417 Inc. (collectively, "The Promise Keepers").[1] For the reasons explained below, the court grants plaintiff's renewed motion.

---

[1] The Complaint alleges that The Promise Keepers 417 Inc. is incorporated in Maryland and that The Promise Keepers 417, Inc. is incorporated in Georgia. Because a comma is the only thing distinguishing one entity from the other, the court refers to The Promise Keepers 417 Inc. as Promise Keepers Maryland, and The Promise Keepers 417, Inc. as Promise Keepers Georgia.

## I.   Background

On September 15, 2017, plaintiff Kendra Ross filed a Complaint against Royall Jenkins, The Value Creators, Inc. (f/k/a The United Nation of Islam, Inc.), The Value Creators LLC, and The Value Creators Inc.  Doc. 1.  The Complaint asserted 16 federal and state law claims.  On May 23, 2018, the court entered default judgment against defendants Royall Jenkins, The Value Creators, Inc. (f/k/a The United Nation of Islam, Inc.), The Value Creators LLC, and The Value Creators Inc. (the "Judgment Debtors").  *See* Doc. 41.

On February 15, 2019, plaintiff filed a Complaint against The Promise Keepers seeking to void certain asset transfers between Judgment Debtors and The Promise Keepers.  Compl., *Ross v. The Promise Keepers, Inc.*, No. 19-2091 (D. Kan. Feb. 15, 2019), ECF No. 1.  Plaintiff amended her Complaint on March 25, 2019.  Am. Compl., *Ross*, No. 19-2091 (D. Kan. Mar. 25, 2019), ECF No. 45.  Plaintiff served The Promise Keepers on March 27, 2019.  Return of Service, *Ross*, No. 19-2091 (D. Kan. Apr. 4, 2019), ECF No. 60; Return of Service, *Ross*, No. 19-2091 (D. Kan. Apr. 4, 2019), ECF No. 61; Return of Service, *Ross*, No. 19-2091 (D. Kan. Apr. 4, 2019), ECF No. 62.  On April 11, 2019, the court consolidated Case No. 19-2091 with Case No. 17-2547.  Doc. 193.

On April 23, 2019, plaintiff filed an Application for Clerk's Entry of Default against The Promise Keepers.  Doc. 194.  On May 1, 2019, the Clerk entered default against The Promise Keepers under Federal Rule of Civil Procedure 55(a).  Clerk's Entry of Default, *Ross*, No. 19-2091 (D. Kan. May 1, 2019), ECF No. 68.

On June 19, 2019, plaintiff filed a Motion for Default Judgment against The Promise Keepers, seeking judgment in the amount of $8,055,730.64.  Doc. 208.  Plaintiff asserted The Promise Keepers were liable for her judgment in her prior case under principles of res judicata

2

and collateral estoppel. Doc. 209 at 8–9. Plaintiff also sought judgment under two alternative claims against The Promise Keepers: one for violation of the Kansas Uniform Fraudulent Transfer Act and the other for unjust enrichment. *Id.* at 9–13.

On March 16, 2020, the court denied default judgment on plaintiff's "res judicata/collateral estoppel" claim and unjust enrichment claim. Doc. 266 at 8–10, 12–13. But the court concluded plaintiff had shown "Judgment Debtors and The Promise Keepers acted with actual intent to hinder, delay, or defraud plaintiff, violating the [Kansas Uniform Fraudulent Transfer Act]." *Id.* at 12. And the court also concluded this violation entitled plaintiff to recover damages. *Id.* at 13. But, because the record did not adequately reflect the damage award plaintiff sought, the court denied her request for monetary damages without prejudice. *Id.* at 14.

On May 29, 2020, plaintiff renewed her motion, but never attached an affidavit to support her damage claim. *See* Doc. 269. The court deferred its ruling on the motion and ordered plaintiff to do one of two things: supplement the record or schedule an evidentiary hearing. Doc. 276. Plaintiff complied and filed supplementary materials supporting her damage claim. Doc. 279.

**II.     Legal Standard**

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment. First, Rule 55(a) allows the Clerk to enter a default against a party who "has failed to plead or otherwise defend" a lawsuit. Second, after the Clerk enters default, plaintiff may request the Clerk to enter judgment if the amount sought is "a sum certain or a sum that can be made certain by computation[.]" Fed. R. Civ. P. 55(b)(1). When considering a motion for default judgment, the court may hold a hearing if "it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D)

3

investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (citations and internal quotation marks omitted). The court accepts as true all well-pleaded factual allegations in the Complaint. *Id.* This presumption does not extend, however, to allegations about the amount of damages. *Id.*

But, even after default, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). When deciding whether to enter a default judgment, a district court enjoys broad discretion. *Mathiason*, 187 F. Supp. 3d at 1274 (citation omitted).

A default judgment also does not establish the amount of damages. *Id.* at 1274–75. Instead, "[p]laintiff must establish that the amount requested is reasonable under the circumstances." *Id.* at 1275 (citing *DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)). A court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (further citations and internal quotation marks omitted)).

### III. Discussion

Plaintiff seeks judgment of $300,000 plus interest from The Promise Keepers. Doc. 270 at 1. The court already has concluded that plaintiff has shown Judgment Debtors and The

Promise Keepers are liable to her for damages under the Kansas Uniform Fraudulent Transfer Act. Doc. 266 at 12, 13. The court thus considers only whether the record supports plaintiff's requested damage award.

Kansas law allows the court to void transfers between Judgment Debtors and The Promise Keepers "to the extent necessary to satisfy [plaintiff's] claims." Kan. Stat. Ann. § 33-207(a)(1). Plaintiff "may recover judgment for the value of the asset transferred" at the time of the transfer or "the amount necessary to satisfy the creditor's claim, whichever is less." Kan. Stat. Ann. § 33-208(b), (c). In support of her claim, plaintiff has supplied a declaration from her attorney Benjamin Abel, and a declaration and certified expert report from William Harvey. Doc. 279. Mr. Abel testifies that plaintiff retained Mr. Harvey "to determine the retrospective market value of certain property owned by Judgment Debtors." *Id.* at 2. Mr. Harvey is a professional appraiser in West Virginia, with more than 40 years' experience. *Id.* at 28–32. Mr. Harvey also testifies that plaintiff hired him to prepare an expert report about The Promise Keeper's property in West Virginia. *Id.* at 5–6. Mr. Harvey's report contends that the 51 acres in West Virginia that Judgment Debtors fraudulently transferred to The Promise Keepers was worth $300,000 when it was transferred. *Id.* at 11–27.

The court has reviewed plaintiff's supporting materials, including attorney Benjamin Abel's declaration, Mr. Harvey's declaration, and Mr. Harvey's report, and finds that the record adequately reflects the basis for the requested award. A court may award damages "'only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting *Adolph Coors Co.*, 777 F.2d at 1544 (further citations and internal quotation marks omitted)). And, "the court may rely on detailed affidavits or documentary evidence to determine the

5

appropriate sum for default judgment." *Mathiason*, 187 F. Supp. 3d at 1277 (quoting *Seme v. E & H Prof'l Sec. Co. Inc.*, No. 08-CV-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010)). Plaintiff's first Motion for Default Judgment (Doc. 208) established that Judgment Debtors transferred the West Virginia property to The Promise Keepers. Doc. 209-4 (Quit Claim Deed between The Value Creators and The Promise Keepers transferring the West Virginia Property). In its last Order, the court concluded Judgment Debtors and The Promise Keepers "acted with actual intent to hinder, delay, or defraud plaintiff" under the Kansas Uniform Fraudulent Transfer Act. Doc. 266 at 12.

Under Kansas law, plaintiff "may recover judgment for the value of the asset transferred" or "the amount necessary to satisfy the creditor's claim, whichever is less." Kan. Stat. Ann. § 33-208(b). The value of the asset is measured "at the time of the transfer . . . ." *Id.* § 33-208(c). Plaintiff has established that the West Virginia property's market value was $300,000 when Judgment Debtors transferred it to The Promise Keepers on July 7, 2018. As plaintiff currently seeks to satisfy a more than $8 million judgment (Doc. 41), $300,000 does not exceed the amount she may recover under Kansas law. So, the court grants plaintiff's request for monetary damages. Plaintiff is entitled to a $300,000 judgment—the value of the West Virginia property Judgment Debtors transferred to The Promise Keepers on July 7, 2018.

The court thus enters default judgment against The Promise Keepers on plaintiff's Kansas Uniform Fraudulent Transfer Act claim in the amount of $300,000.[2]

---

[2]   The court notes plaintiff contends her motion is "partial." Doc. 269 at 1; Doc. 270 at 1. But plaintiff never explains what "partial" means in her motion. Nor does she invoke Rule 54(b), which allows the court to enter "final judgment as to one or more, but fewer than all, claims or parties" if the court determines "there is no just reason for delay." Fed. R. Civ. P. 54(b). The court is aware that plaintiff alleged The Promise Keepers received other property fraudulently transferred from Judgment Debtors, but in this "partial" motion, plaintiff merely invokes Rule 55(b), which does not provide for partial judgments. *See* Fed. R. Civ. P. 55(b). The court thus enters final judgment and closes the case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Renewed Partial Motion for Default Judgment (Doc. 269) (also available as Doc. 81 in the CM/ECF record in *Ross v. The Promise Keepers, Inc., et al.*, No. 19-2091) is granted.  Under Fed. R. Civ. P. 55 and D. Kan. Rule 77.2, the Clerk of the Court is instructed to enter judgment against defendants The Promise Keepers, Inc., The Promise Keepers 417, Inc., and The Promise Keepers 417 Inc. for $300,000 plus post-judgment interest at the rate permitted by law.

**IT IS SO ORDERED.**

**Dated this 17th day of July, 2020, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**